FILED
DEC -7 2010
Clerk U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

TORRANCE JONES, #19467-018
Petersburg Low
    Plaintiff,
vs.  PO Box 1000
     Petersburg, VA 23804

EXECUTIVE OFFICE FOR THE UNITED
STATES ATTORNEYS,
    Defendant.

Case: 1.10-cv-02074
Assigned To : Urbina, Ricardo M.
Assign. Date : 12/7/2010
Description: FOIA/Privacy Act

COMPLAINT UNDER THE FREEDOM OF INFORMATION ACT (FOIA),
5 U.S.C. § 552 (a)(4)(B) AND PRIVACY ACT 5 U.S.C. § 552a

NOW COMES, Plaintiff, TORRANCE JONES proceeding Pro-se, request that this honorable Court grant this petition and order the Executive Office for the United States Attorneys to disclose all statements entirely since the Exemption 7 (c) is overcome by government agents acting negligently or otherwise improperly. Or order an evidentiary hearing to take place to resolve any factual dispute.

JURISDICTION

Under both the Freedom of Information Act 5 U.S.C. § 552 and the Privacy Act 5 U.S.C. § 552a this complaint is timely and each claim should be adjudicated on the merits.

FOIA PROCEDURAL HISTORY

1.) On May 19, 2010, Plaintiff filed a Freedom of Information and Privacy Act requesting the complete statements set forth in Plaintiff's Presentence Report which are statements by: Richard Mann on May 15, 1996; Michael Rubel on July 29, 1996; Ricky Draper on September 15, 1996; Daniel Dunning on July 29, 1996; and Brian Eversole on July 29, 1996. See Exhibit __1__.

2.) On June 24, 2010, the Executive Office for the United States Attorneys acknowledge that they had received Plaintiff's FOIA and Privacy Act complaint,

- 1 -

1

Request No. 2010-1935. Within that response, Plaintiff was denied disclosure of the requested statements. See Exhibit _2_.

3.) On July 5, 2010, Plaintiff filed an appeal to the denial of the requested statement. See Exhibit _3_.

4.) On September 8, 2010, Plaintiff's appeal (Appeal No. 2010-2596) was denied too. See Exhibit _4_.

5.) Thus, Plaintiff filed this complaint timely.

## BACKGROUND ON PLAINTIFF'S CRIMINAL CASE
## UNITED STATES v. TORRANCE JONES, CASE NO.: 5:96-CR-79-1-BO

6.) Plaintiff was indicted for conspiracy to possess with the intent to distribute cocaine and cocaine base 21 U.S.C. 846 and 21 U.S.C. § 841 (a)(1); possession with intent to distribute cocaine 21 U.S.C. § 841(a)(1); and possession with intent to distribute cocaine base 21 U.S.C. § 841 (a)(1).

7.) On _____, 1996, Plaintiff's counsel Bridgett Aguirre filed a motion for discovery that requested the government to turn-over all Brady material. This discovery motion was granted.

8.) On July 8, 1996, Richard Mann entered into a plea agreement in open court and the memorandum of plea agreement was signed by Mr. Mann and Assistant U.S. Attorney Christine B. Hamilton. Page 6 and Paragraph G of the plea agreement state: "The self incriminating information provided by the defendant pursuant to the debriefing letter May 13, 1996 shall not be used against the defendant..."

9.) On September ____, 1996, Plaintiff went to trial and two government witnesses Michael Rubel and Richard Mann testified during trial on the government's behalf. During Mr. Mann's testimony, Plaintiff's counsel Bridgett Aguirre objected that she had not received statements that Mr. Mann had made to the government. However, the government contested counsel's objection and stated "all statements had been provided to counsel." Then, the judge denied

Case 1:10-cv-02074-ABJ Document 1 Filed 12/07/10 Page 3 of 9

counsel's objection.

10.) On January 3, 1997, Plaintiff's co-defendant, Milton Lewis, who proceeded to trial along with Plaintiff was represented by attorney Susan Seahorn. Ms. Seahorn wrote AUSA Christine Hamilton a letter stating: "As you know, I, on Mr. Lewis' behalf, was never supplied with these statements [i.e. in the PSR] either as part of discovery, pursuant to Jencks or Brady material for cross-examination based on the inconsistency of statements."

11.) In the early part of January, 1997, Plaintiff received his Presentence Report (hereafter PSR) and on pages 7 - 9 Plaintiff discovered 5 withheld statements that the prosecutor, Christine Hamilton, and investigative agents had gained prior to Plaintiff's trial.

12.) On January 28, 1997, Plaintiff was sentenced to 30 years for 1.5 kilograms of cocaine base.

13.) On January 28, 1996, during Mr. Mann's sentencing hearing, his attorney stated to the District Judge: "That immediate cooperation resulted in an initial debriefing, actually at the courthouse, and a subsequent debriefing by Detective [Brad] Kennon and others at the jail."

14.) On _____, 2000, Plaintiff filed a 2255 and during the 2255 investigation stage, Plaintiff was able to gain an affidavit from Bernard Sinclair that stated: I was interviewed by investigative agents Brad Kennon and Anthony Wisniewski and after informing them that: "I didn't traffic drug for Torrance Jones to North Carolina..." "Eventually, Agent Wisniewski tore up the documented notes he made on my responses to the questions asked to me."

## I. REQUEST FOR A VAUGHN INDEX

Plaintiff, first request that the defendant provide the Court and Plaintiff with a Vaughn index that lists all the items withheld and state a specific reason for why each item has been withheld. By the defendant following the Vaughn index

- 3 -

holding it will enable the Court and Plaintiff to proceed through these pleadings efficiently.

Therefore, the Court and Plaintiff should be provided the Vaughn index.

## II. PLAINTIFF OVERCOMES EXEMPTION (7)(d) BECAUSE THE GOVERNMENT OFFICIAL ACTED NEGLIGENTLY OR OTHERWISE IMPROPERLY IN THE PERFORMANCE OF THEIR DUTIES IN PLAINTIFF'S CASE

Plaintiff places before this Court a mountain of evidence that should require the government to turn over the withheld statements by exemption (7)(c). Plaintiff's evidence surely establish a counterweight to the FOIA scale that makes clear the government agents within Plaintiff's case acted negligently or otherwise improperly in the performance of their duties. Plaintiff's evidence is well above bare suspicion, and easily warrant a belief by a reasonable person that the alleged government impropriety might have occurred. See, **National Archives v. Favish**, 541 US 157, 158 L.Ed.2d 319 (2004).

The mountain of evidence begins at the base and closes out at the peak. Government witness Richard Mann pled guilty and within the plea agreement it mentioned that: "The self incriminating information provided by the defendant pursuant to the debriefing letter May 13, 1996 shall not be used against the defendant..." See Exhibit _5_. Page 6, Paragraph G.

That very self incriminating information is the statement of May 15, 1996 that was placed into Plaintiff's Presentence Report on Page 7, Paragraph 14 which states:

> "On May 15, 1996, Richard Mann was interviewed by investigative agents and reported he became acquainted with Torrance Jones... in high school in Homestead, Florida."
>
> "...Mann was instructed by Bourgoine to obtain the cocaine from Torrance Jones. After Christmas 1995, Mann met Milton Lewis in Miami. Several weeks after this meeting, Mann traveled to Raleigh for Torrance

- 4 -

Jones in order to transport 1 kilograms of cocaine to Rubel. While in Raleigh, Mann obtained $2,000 from Lewis which was provided to Torrance Jones. Two weeks later, Mann was returning to Raleigh with 1 kilogram of cocaine supplied by Torrance Jones, which was intended for Rubel, when Torrance Jones added an additional 6 ounces of cocaine to be supplied to Lewis." Exhibit 6 . (Only section mentioning Torrance Jones are setforth in the argument.)

To confirm that prosecutor Ms. Hamilton and the agents had all participated in gaining statements from Mr. Mann. Mr. Mann's attorney described at Mr. Mann's sentencing hearing:

"That immediate cooperation resulted in an initial debriefing. Actually at the courthouse [with the prosecutor and agents], and a subsequent debriefing by detective [Brad] Kennon and others at the jail." Throughout the course of the next couple of weeks, we were able to elicit information through these debriefings regarding the location of Torrance Jones. He identified places where he would sell drugs, where he would sleep, in what motels; identified other associates who are not part of this case, identified other relatives who would have information, as well as other cities. See, Mr. Mann's sentencing transcript, Page 7. Exhibit 7 .

However, when considering Plaintiff's trial transcripts, it is obvious that prosecutor Ms. Hamilton misled the Court and counsel that there were no statements. Since, she repeatedly told the Court that there was no statements. This is what took place at trial: (Questions by Plaintiff's counsel Bridgett Aguirre and the answers are government witness Richard Mann.)

Q. You would make statements about Torrance Jones during the interviews?

A. Yes.

Q. And when you gave that statement was the officer writing down what you had said in order to ensure it's accuracy?

A. Yes.

    MS. AGUIRRE: Your Honor, at this time I would move, pursuant to Rule 26.2 for production of such statements.

    MS. HAMILTON: Your Honor, I have no Jencks statements that relate to this witness.

    THE COURT: All right.

    See, Exhibit _6_ trial transcripts, Page 126.

Again, counsel Ms. Aguirre tried to gain statements by asking government witness Mr. Mann questions about the statements he had provided to the government.

    Q. And after you were – after you pled guilty you have been interviewed in order to prepare a Presentence report?

    A. Yes.

    Q. And in that interview you also made a statement about the conspiracy that you're involved with, didn't you?

    A. What my involvement was in it?

    Q. Yes.

    A. Yes.

    Q. And in that you also made statements regarding Torrance Jones, didn't you?

    A. Particularly any statement? I mean, I did get the drugs from him, yes.

    Q. And you made statements about Torrance Jones providing drugs to you.

    A. Yes.

    MS. AGUIRRE: Your Honor, again, I would move for a copy of that statement as well.

    MS. HAMILTON: Your Honor, we haven't received the Presentence Investigation Reports in this case, so I don't even have a report to submit to the Court for an in camera review.

    THE COURT: Do you want me to send the jury out? I be glad to do it.

    See, Exhibit _7_ trial transcript. Pages 127 and 128.

Throughout the entire trial prosecutor Ms. Hamilton statements to the Court was improperly because the very statement that was placed in Plaintiff's PSR derived from Ms. Hamilton and the investigative agents. So, there was no need for Ms. Hamilton to wait to receive a Presentence Report when she knew all along that the statements her and investigative agents had gained in an interview on May 15, 1996 in which she set forth the ground rules for the statements that she gained in a letter on May 13, 1996. Those statements were provided to the Probation Officer, Mary F. King. This is made clear by Ms. King's statement in a letter to Plaintiff:

> "In regard to the existence of Mann's statement the Probation Officer obtained this statement from the investigative agents." Exhibit _10_.

Last and very telling of acting improperly in the performance of her (Prosecutor Ms. Hamilton) duties is the letter that Plainttiff's co-defendant Milton Lewis' attorney, Susan Seahorn, mailed to prosecutor Ms. Hamilton. The letter held:

> "I understand that your position is based on statements made by the following persons on the following dates:
>
> > Richard Mann - May 15, 1996
> > Daniel Dunning - July 24, 1996
> > Mike Rubel - July 29, 1996
> > Brian Eversole - July 29, 1996
>
> It is my understanding from probation that you believe these statements are inconsistent with trial testimony presented and that these statements would support a finding of a greater quantity of drugs then that testified to under oath during trial. As you know, I, on Mr. Lewis' behalf, was never supplied with these statements either as a part of discovery, pursuant to Jencks or as Brady material for cross-examination based on the inconsistency of the statements." Exhibit _11_.

A summary of co-defendant Daniel Dunning's July 24, 1996 statement is in Plaintiff's PSR on Pages 7 and 8, Paragraph 15. That were gained by investigative agents. Exhibit _12_.

Second, a summary of government witness Michael Rubel's July 29, 1996 statement record by investigative agents is in Plaintiff's PSR on Page 8, Paragraph 16. Exhibit _12_.

Third, a summary of co-defendant Brian Eversole's July 29, 1996 statement record by investigative agents is in Plaintiff's PSR on Page 8 and 9, Paragraph 17. Exhibits _12,13_.

Fourth, a summary of government witness Ricky Draper's September 15, 1996 statement record by investigative agents is in Plaintiff's PSR on Page 9, Paragraph 18. Exhibit _13_.

Government witness Bernard Sinclair was interviewed by investigative agents Brad Kennon and Anthony Wisniewski and provided to them statements concerning Plaintiff. Specifically, Mr. Sinclair stated in his affidavit:

> "During the interview the agents questioned me concerning Torrance Jones. One of my responses to a question was that I didn't traffic drugs for Torrance Jones to North Carolina. Another response was that I didn't have anything to do with drugs in North Carolina." Paragraph 6.
>
> "Apparently Agent Anthony Wisniewski was upset that I would not give him false information while responding to his questions about Torrance Jones and being involved with narcotics." Paragraph 7.
>
> "The agents continually threatened me with a life sentence. Eventually Agent Wisniewski tore up the documented notes he made on my responses to the questions asked to me." Paragraph 12, Exhibit _14_.

In closing, the government prosecutor and agents acted negligently or otherwise improperly in the performance of their duties by misleading the public, Plaintiff, and Court in withholding statements and destroying statements. Thus, this has been proven with the evidence attached Exhibits _5_ through _14_, which establish clear evidence that questions whether the government official properly discharged their official duties.

## CONCLUSION

Plaintiff sincerely requests that this motion be GRANTED and all the withheld statements be immediately provided to Plaintiff.

RESPECTFULLY SUBMITTED,

*Torrance Jones*
Torrance Jones
Reg. No. 19267-018
P.O. Box 1000
Petersburg, VA. 23804-1000

Submitted November 5th, 2010.